[No. 709-2. Division Two. December 29, 1972.]

*In the Matter of the Estate of* LAWRENCE EINAR BURKLAND, *Deceased.*
BERT N. BURKLAND, *Respondent,* v. MARGARET L. HILL, *Appellant.*

*Harry R. Calbom, Jr.* (of *Calbom, Walker, Cox & Andrews*) and *Jerome Walstead* and *Barry J. Dahl* (of *Walstead, Mertsching, Husemoen & Donaldson*), for appellant.

*Wayne D. Purcell* and *Vernon J. Guinn* (of *Studley, Purcell & Spencer*), for respondent.

PETRIE, C.J.—Lawrence Einar Burkland died in Cowlitz County, Washington on September 17, 1970. The next day Margaret L. Hill petitioned the Cowlitz County Superior Court to admit to probate a document entitled Last Will and Testament of Lawrence Einar Burkland dated July 31, 1970, by the terms of which Mrs. Hill was appointed personal representative and was designated sole beneficiary. The will was admitted to probate as the last will of the decedent and Margaret L. Hill was confirmed as the personal representative. She executed her oath and letters testamentary were issued to her.

On November 20, 1970, the decedent's brother, Bert N. Burkland, filed a petition asking that the will be annulled and that letters testamentary theretofore issued to Mrs. Hill on September 18, 1970 be canceled. The petition sought to void the will on three theories: (1) that it had been improperly executed; (2) that the testator lacked testamentary capacity; and (3) that the testator was acting under the undue influence of another when the will was executed.

The matter was heard before the court assisted by an advisory jury. The trial court determined that the will was properly executed but submitted the questions of testamentary capacity and undue influence to the jury for its advi-

sory opinion. The jury answered special interrogatories expressing its opinion that the testator lacked testamentary capacity and was unduly influenced by Margaret L. Hill. The trial court rejected entirely the jury's advisory opinion that the testator lacked testamentary capacity and, independently of the jury's advice, arrived at the same conclusion as did the jury on the question of undue influence. Findings of fact were entered and on November 12, 1971, the court declared null and void the will executed on July 31, 1970 and revoked letters testamentary theretofore issued to Mrs. Hill. She has appealed to this court.

The unchallenged findings of fact, which we are obliged to accept as verities, present the following picture: At the time of his death, Lawrence Einar Burkland was 71 years of age, a widower without children. He left surviving a younger brother (contestant Bert N. Burkland) and two older sisters, both widows. The appraised value of his estate was in excess of $280,000.

For many years prior to 1956, the decedent had been engaged in business in the city of Longview as owner and operator of a Packard automobile agency in which he was assisted by his wife, Lenore, who acted as his bookkeeper. In 1956, decedent sold his automobile business and retired. For many years Mr. and Mrs. Burkland had lived in an apartment house consisting of seven apartments in Longview. After Mr. Burkland's retirement, they continued to reside in the same apartment home. In 1963 or 1964 they commenced construction of a house on the shore of Silver Lake, Washington. Thereafter, during the life of Lenore Burkland, they resided both in the apartment house and at the lake house at Silver Lake. Early in 1969, Lenore Burkland, a diabetic, fell, fractured her hip, was hospitalized, spent several months in a rest home, and ultimately died on August 8, 1969.

Within 2 months after his wife's death, Mr. Burkland renewed an acquaintanceship with Margaret L. Hill. The relationship between Mr. Burkland and Mrs. Hill developed shortly thereafter to the extent that on a number of occa-

sions she stayed overnight for a matter of 2 or 3 days at a time at the lake house. She also occupied the same bedroom with him at night at his apartment as frequently as 2 or 3 nights a week. He spent a great part of the balance of his time at her home in Kelso, Washington where he also remained overnight on a number of occasions. A confidential relationship existed between Margaret Hill and decedent at and prior to the execution of his will on July 31, 1970, as they were constantly together. She had access to his safety deposit box. In their joint names, they owned a time certificate of deposit in the amount of $15,000 at a savings and loan association in Longview. She was present in the office of the attorney at the time decedent signed the will dated July 31, 1970.

From the period commencing with his relationship with Mrs. Hill in October, 1969, through the following spring and summer of 1970, decedent's relationship with his friends, neighbors and family underwent a marked change. Whereas he previously enjoyed a close relationship with his neighbors, manifested by his urging them to use his facilities at the lake house, including his shop, tools and equipment, he suddenly adopted an attitude of indifference and disinterest toward his close friends and neighbors.

In addition, the decedent avoided members of his family with whom he had previously enjoyed a warm relationship. Decedent's brother, Bert, worked as a plumber and mechanic all of his adult life. He is now retired and his income is $221.50 per month. A close relationship existed between the two brothers until approximately May, 1970. At that time a disruption of the close family relationship occurred as a direct result of the interference of Margaret L. Hill, who made false and untrue statements to decedent to the effect that Florence Burkland, Bert's wife, had made derogatory remarks about decedent. Decedent's sister, Beda Boyle, resides in very modest circumstances in Great Falls, Montana. Her right leg has been amputated at or above the knee, but she is unable to wear an artificial limb and consequently walks on crutches. Her income consists of a rail-

road pension of approximately $150 per month plus rental of a small portion of her home. During the 16 months preceding his death, the decedent had provided Mrs. Boyle with the sum of $2,652.88. The relationship of decedent to Beda Boyle was that of a brother concerned about his sister's welfare. Decedent's other sister, Hilda Becklin, has an income from social security benefits and a company pension totaling $184 per month. For many years the relationship between decedent, his brother and sisters was one of mutual concern for their mother and each other.

In 1938 decedent and his wife both executed wills. Under the terms of that will (in the event decedent's wife did not survive him), decedent bequeathed one-half of his estate to his brother, Bert, and the other one-half equally to his wife's half-brothers, George and Robert Anderson. That will continued in effect until he executed another will on October 3, 1969 (after his wife's death). The 1969 will provided for specific bequests of $5,000 each to his sister, Beda Boyle and his brother-in-law, Robert Anderson, and a specific bequest of $1,000 to Robert Jessen. The residue of his estate was bequeathed in equal portions to his brother, Bert, his brother-in-law, George Anderson, and another brother-in-law, Rolland Hoffman.

On July 31, 1970 decedent executed the will, which has been attacked herein, in which he left all of his estate to Margaret Hill, and in the event she did not survive him, one-half of his estate was bequeathed to George Anderson and the other one-half was bequeathed to Margaret Hill's sister, Lowrane Cook, a resident of Columbia Falls, Montana. There was no direct evidence offered to show that Lowrane Cook ever met or knew the decedent. This contingent disposition to Lowrane Cook was consistent with the desire of Margaret Hill as expressed in her own will and as expressed in the will of her deceased husband, which will Margaret Hill helped plan. She acted with haste to secure personal control of the personal property of the decedent's estate in that she commenced moving furniture from dece-

dent's apartment the day following his death. She had the will in her possession and had it admitted to probate at 1:05 p.m. on the day following decedent's death.

Mr. Burkland's death on September 17, 1970, occurred suddenly as a result of massive hemorrhaging from an aneurysm of the aorta. His autopsy report showed congestion of the lungs, arteriosclerosis, restricted blood flow in the coronary arteries, a diseased pancreas and an abnormal kidney condition. He had a history of high blood pressure and chronic pancreatitis. He was a heavy drinker, but he did have the mental capacity to execute his will on July 31, 1970, which was properly and legally executed. Mrs. Hill has assigned error to a finding of fact that "in the months preceding the execution of his will and his death, he became slightly senile and somewhat childish, primarily while drinking." We find substantial evidence in the record manifesting both a slight loss of mental faculties associated with old age and somewhat immature actions befitting a child—particularly while drinking.

 With that factual basis, let us inquire whether or not they support a conclusion that the terms of the decedent's last will and testament were the result of the undue influence of Margaret L. Hill. We find it impossible—certainly unnecessary—to improve upon the scholarly definition and discussion of undue influence written by the then Chief Justice William J. Steinert in *Dean v. Jordan,* 194 Wash. 661, 671, 79 P.2d 331 (1938):

> To vitiate a will there must be something more than mere influence. There must have been an undue influence at the time of the testamentary act, which interfered with the free will of the testator and prevented the exercise of judgment and choice. . . .
>
> The evidence to establish fraud or undue influence must be clear, cogent, and convincing. . . .
>
> Nevertheless certain facts and circumstances bearing upon the execution of a will may be of such nature and force as to raise a suspicion, varying in its strength, against the validity of the testamentary instrument. The most important of such facts are (1) that the beneficiary

occupied a fiduciary or confidential relation to the testator; (2) that the beneficiary actively participated in the preparation or procurement of the will; and (3) that the beneficiary received an unusually or unnaturally large part of the estate. Added to these may be other considerations, such as [4] the age or condition of health and mental vigor of the testator, [5] the nature or degree of relationship between the testator and the beneficiary, [6] the opportunity for exerting an undue influence, and [7] the naturalness or unnaturalness of the will. The weight of any of such facts will, of course, vary according to the circumstances of the particular case. Any one of them may, and variously should, appeal to the vigilance of the court and cause it to proceed with caution and carefully to scrutinize the evidence offered to establish the will.

The combination of facts shown by the evidence in a particular case may be of such suspicious nature as to raise a presumption of fraud or undue influence and, in the absence of rebuttal evidence, may even be sufficient to overthrow the will.

(Citations omitted.) *See also In re Estate of Smith,* 68 Wn.2d 145, 411 P.2d 879, 19 A.L.R.3d 559 (1966).

Let us now examine the substantiated and unchallenged facts in view of the seven critical signposts set forth in *Dean* and repeated in *Smith.*

(1) It is an unchallenged fact that "A confidential relationship existed between Margaret L. Hill and decedent at and prior to the execution of his will on July 31, 1970, as they were constantly together." (2) The fact that Mrs. Hill was present when the will was executed is, of course, no indication that she actively participated in the preparation or procurement of the will. However, the nature of the primary and contingent bequests in the will speak loudly and clearly of the extent of Margaret Hill's participation in the formulation process. The contingent beneficiary of one-half of a substantial estate was Mrs. Hill's sister, who, so far as the record reflects, had never met and did not know the testator. Yet, that disposition was consistent with Mrs. Hill's desire as expressed in her own will and in the will of her deceased husband, whose will she had helped plan.

(3) It is conceded, of course, that Mrs. Hill was the sole beneficiary of the entire estate under the terms of the will —not just the recipient of an unusually or unnaturally large part of the estate.

(4) Mr. Burkland's health and mental vigor had not deteriorated to the point where he no longer had testamentary capacity. It is not totally insignificant, however, that the advisory jury expressed an opinion that he lacked the necessary testamentary capacity. In any event his heavy drinking proclivities had brought him to the brink of senility—if not yet hopelessly incapacitated. (5) The nature of the relationship between Mrs. Hill and Mr. Burkland was purely and simply meretricious—not meritorious. The degree of the relationship as well as (6) the opportunity to exert undue influence is suggested by the finding that "they were constantly together." Certainly the opportunities for exerting undue influence in the formulation of his daily associations were effectively asserted as manifested by the indifference and disinterest which he came to display toward his relatives, friends and neighbors. (7) The almost total unnaturalness of the will has already been noted. It is only necessary at this point to contrast the change—in less than 10 months—from the naturalness of the 1969 will to the unnaturalness of the 1970 will.

There can be no doubt whatsoever that the facts in this case raised a strong presumption of undue influence sufficient to require the proponents of the will to come forward with evidence sufficient at least to balance the scales and restore the equilibrium of evidence touching the validity of the will. The trial court's views as to the extent to which the proponent has met that burden are set forth just prior to his denial of alternative motions for reconsideration or new trial:

> It is my feeling and my findings based upon all of these facts that I have recited, together with the law providing that the proponents have the burden of coming forward with some evidence to explain this, which I feel was not met, that I will make a finding that the will was

as a result of the undue influence of Mrs. Hill, and that the will therefore should be denied.

We are convinced, as was the trial court, that the contestants of the will have demonstrated its invalidity by evidence which is clear, cogent and convincing, that the will executed by Mr. Burkland on July 31, 1970, was influenced by Margaret L. Hill to the extent that the testator's free will had been interfered with and his exercise of judgment and choice had been prevented.

We note very briefly that it is immaterial that the trial court may have improperly instructed the jury as to the degree of proof required, the nature and effect of presumptions created by the evidence, and the burden imposed by any such presumptions. It is quite clear that the trial court formed its own opinion as to the facts, the nature of the presumptions created by those facts, and the proponent's failure to explain them.

It is equally immaterial that in several minor instances evidence was admitted in apparent violation of the deadman's statute, RCW 5.60.030. The proponent of the will has failed to assign error to any fact based upon that evidence.

Judgment affirmed.

PEARSON and ARMSTRONG, JJ., concur.

Petition for rehearing denied January 30, 1973.

Review denied by Supreme Court March 20, 1973.